1
2
3
4          **UNITED STATES DISTRICT COURT**

5              **DISTRICT OF NEVADA**

6

7   JANE DOE,                                          )
                                                       )
8              Plaintiff,                              )        Case No. 2:14-cv-00979-MMD-GWF
                                                       )
9   vs.                                                )        **ORDER**
                                                       )
10  JBF RAK LLC, a foreign corporation,               )        **Motion for Leave to File Notice of**
    CHEERAG B. ARYA, a foreign citizen, VEENA         )        **Removal Exhibit A Under Seal - #3**
11  BHAGIRATH ARYA, a foreign citizen, AMIT           )
    GHANDI, a foreign citizen, et.al.                 )
12                                                     )
               Defendants.                            )
13  _____ )

14          This matter is before the Court on Defendants' Motion for Leave to File Notice of Removal

15  Exhibit A Under Seal (#3), filed on June 18, 2014.  Plaintiff filed her Opposition to Defendants'

16  Motion (#8) on June 19, 2014.  Defendants filed their Reply (#19) on June 30, 2014.  The Court

17  conducted a hearing in this matter on July 7, 2014.

18                              **BACKGROUND**

19          Plaintiff, using the fictitious name "Jane Doe," filed her civil complaint against Defendants

20  in the District Court, Clark County, Nevada on May 19, 2014.  The complaint is 51 pages long.

21  The "Factual Allegations" consist of 75 separate paragraphs.  In addition, 25 exhibits (totaling 84

22  pages) are attached to the complaint.  These exhibits consist of printed emails, text messages and

23  photographs.  The complaint alleges causes of action for sexual battery, battery, assault, false

24  imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress,

25  violation of a foreign state's law prohibiting premarital co-habitation, negligence per se, fraudulent

26  misrepresentation, conversion, and breach of contract.  These claims arise out of an allegedly

27  abusive personal/romantic relationship between Plaintiff who is resident of Clark County, Nevada

28  and the principal individual defendant who is a citizen of a foreign nation.  The "Factual

Allegations," together with the attached exhibits, set forth in detail the allegedly abusive and, in

some instances, allegedly criminal conduct of the principle defendant.  Many of the alleged acts or

incidents occurred in countries other than the United States.

Defendants, who have not yet been served with the complaint, removed this action to the

United States District Court for the District of Nevada on June 18, 2014.  Removal is based on

federal jurisdiction pursuant to diversity of citizenship between Plaintiff and Defendants.  *See*

*Notice of Removal (#1)*.  In their instant motion, Defendants seek leave to file a copy of Plaintiff's

complaint under seal as an exhibit to their notice of removal and request that the complaint remain

sealed pending further order of the Court.  Defendants state that if and when they are served with

the summons and complaint, they will move for dismissal of the complaint based on lack of

personal jurisdiction over them in the District of Nevada, or in any other jurisdiction in the United

States.

## DISCUSSION

The first issue before the Court is the legal standard to be applied in determining whether

the complaint should be sealed.  As stated in *Kamakana v. City and County of Honolulu*, 447 F.3d

1172, 1178 (9th Cir. 2006), "[h]istorically, courts have recognized a 'general right to inspect and

copy public records and documents, including judicial records and documents.'  *Nixon v. Warner*

*Commc'ns, Inc.,* 435 U.S. 589, 597 & n. 7, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). This right is

justified by the interest of citizens in 'keep[ing] a watchful eye on the workings of public agencies.'

*Id.* at 598, 98 S.Ct. 1306."  Only a narrow range of judicial records have been held to be not subject

to the presumptive right of public access at all because the records have traditionally been kept

secret for important policy reasons.  The only recognized categories of documents falling within

this narrow range are grand jury transcripts and warrant materials in the midst of a pre-indictment

investigation.  *Kamakana*, 447 F.3d at 1178.  The court further stated:

> Unless a particular court record is one "traditionally kept secret," a
> "strong presumption in favor of access" is the starting point. *Foltz,*
> 331 F.3d at 1135 (citing *Hagestad v. Tragesser,* 49 F.3d 1430, 1434
> (9th Cir.1995)). A party seeking to seal a judicial record then bears
> the burden of overcoming this strong presumption by meeting the
> "compelling reasons" standard. *Foltz,* 331 F.3d at 1135. That is, the
> party must "articulate[ ] compelling reasons supported by specific

factual findings," *id.* (citing *San Jose Mercury News, Inc. v. U.S. Dist. Ct.,* 187 F.3d 1096, 1102–03 (9th Cir.1999)), that outweigh the general history of access and the public policies favoring disclosure, such as the "'public interest in understanding the judicial process.'" *Hagestad,* 49 F.3d at 1434 (quoting *EEOC v. Erection Co.,* 900 F.2d 168, 170 (9th Cir.1990)). In turn, the court must "conscientiously balance [ ] the competing interests" of the public and the party who seeks to keep certain judicial records secret. *Foltz,* 331 F.3d at 1135. After considering these interests, if the court decides to seal certain judicial records, it must "base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Hagestad,* 49 F.3d at 1434 (citing *Valley Broadcasting Co. v. U.S. Dist. Ct.,* 798 F.2d 1289, 1295 (9th Cir.1986)).

In general, "compelling reasons" sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such "court files might have become a vehicle for improper purposes," such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets. *Nixon,* 435 U.S. at 598, 98 S.Ct. 1306; *accord Valley Broadcasting Co.,* 798 F.2d at 1294. The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records. *Foltz,* 331 F.3d at 1136.

*Kamakana,* 447 F.3d 1178-79.

The "compelling reasons" standard "applies fully to dispositive pleadings, including motions for summary judgment and related attachments." *Kamakana,* 447 F.3d at 1179. The court has, however, carved out an exception to the compelling reasons standard for documents attached as exhibits to a non-dispositive motion. The party seeking to seal documents attached to a non-dispositive motion must satisfy a lower "good cause" standard. *Id.*, at 1179-80. The same good cause standard applies to requests to seal those portions of a non-dispositive motion that contain information that is confidential or otherwise privileged.

The decision in *Kamakana* was based on the common law right of public access to judicial records. The Ninth Circuit has also recently held that the news media and the public have a qualified First Amendment right of access to judicial records in civil actions. *Courthouse News Service v. Planet*, 756 F.3d 776 (9th Cir. 2014). The plaintiff in *Courthouse News Service* published daily reports for its subscribers about civil litigation, including summaries of newly filed civil complaints. The plaintiff sued a California Superior Court clerk for allegedly violating the First Amendment by denying plaintiff same day access to newly filed civil complaints. The district

3

court abstained from hearing the suit pursuant to *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, (1941) and *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669 (1941).  In reversing, the Ninth Circuit noted that abstention under *Pullman* and *O'Shea* is rarely granted in cases raising First Amendment issues.  The court stated that although the Supreme Court originally recognized the First Amendment right of public access in the context of criminal trials, "federal courts of appeal have widely agreed that it extends to civil proceedings and associated records and documents." *Courthouse News Service*, 750 F.3d at 786, citing *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 305 (2d Cir. 2011); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1061 (3d Cir. 1984); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984); and *Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*, 710 F.2d 1165, 1177 (6th Cir. 1983). In holding that plaintiff had asserted a viable claim for violation of the First Amendment, the court stated;

> CNS's First Amendment right of access claim falls within the general rule against abstaining under *Pullman* in First Amendment cases. CNS's right of access claim implicates the same fundamental First Amendment interests as a free expression claim, and it equally commands the respect and attention of the federal courts.
>
> We join the Second Circuit in reaching this conclusion.  In *Hartford Courant Co. v. Pellegrino,* 380 F.3d 83, 100 (2d Cir. 2004), Connecticut newspapers challenged the state court system's longstanding practice of sealing docket sheets in certain civil cases, sometimes in the absence of any court order so requiring. *Id.* at 86–89.  The Second Circuit held that the press and the public had a qualified First Amendment right of access to the docket sheets, reasoning that "docket sheets provide a kind of index to judicial proceedings and documents, and endow the public and press with the capacity to exercise their rights guaranteed by the First Amendment." *Id.* at 93.

*Courthouse News Service*, 750 F.3d at 787.

The Ninth Circuit did not reach the ultimate merits of the plaintiff's claim that the court clerk violated its First Amendment right of access.  The court stated that the right of access may be overcome by "an overriding [governmental] interest based on findings that closure is essential to preserve higher values." *Id,* 750 F.3d at 793 n. 9.  Likewise, the Second Circuit in *Hartford Courant v. Pellegrino* stated that the "presumption [of public access] is rebuttable upon a demonstration that suppression is essential to preserve higher values and is narrowly tailored to

serve that interest." 380 F.3d at 96, quoting *Grove Fresh Distrib., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) and *Press-Enterprise Co. v. Superior Court of California, Riverside County*, 464 U.S. 501, 104 S.Ct. 819, 824 (1984).

Defendants argue that they should only be required to satisfy the "good cause" standard in order for the court to seal the complaint in this case. Defendants note that there is no dispositive motion pending and that they have not even been served with the complaint. Defendants contend that Plaintiff filed the complaint, with its detailed allegations of abuse and criminal misconduct, for the purpose of inducing Defendants to make an early settlement. Defendants also argue that if the complaint is sealed, Plaintiff may never pursue service of process against the Defendant because of the improbability that this court has personal jurisdiction over Defendants. Not surprisingly, Plaintiff asserts that she intends to pursue this action against the Defendants and argues that there is a substantial basis for the exercise of personal jurisdiction over the Defendants in this district.

Some district courts in the Ninth Circuit have held that the compelling reasons standard applies to a request to seal a civil complaint. The leading decision in this line is *In re NVIDIA Corp. Derivative Litigation*, 2008 WL 1859067, *3 (N.D.Cal. 2008) which states as follows:

> Under the Ninth Circuit's jurisprudence in *Kamakana,* a request to seal all or part of a complaint must clearly meet the "compelling reasons" standard and not the "good cause" standard. While a complaint is not, per se, the actual pleading by which a suit may be disposed of, it is the root, the foundation, the basis by which a suit arises and must be disposed of. Further, along with a summons, it is the means by which a plaintiff invokes the authority of the court, a public body, to dispose of his or her dispute with a defendant. Thus, this Court cannot conclude a complaint is "unrelated, or only tangentially related, to the underlying cause of action." It *provides* the causes of action. Likewise, this Court cannot conclude sealing parts of a complaint is analogous to sealing records "not directly relevant to the merits of the case." It *establishes* the merits of a case, or the lack thereof. As the Ninth Circuit held in *Kamakana,* "the resolution of a dispute on the merits ... is at the heart of the interest in ensuring the public's understanding of the judicial process and of significant public events." Likewise, when a plaintiff invokes the Court's authority by filing a complaint, the public has a right to know who is invoking it, and towards what purpose, and in what manner. Thus, the Court concludes a request to seal all or part of a complaint must meet the "compelling reasons" standard and not the "good cause" standard.

. . .

. . .

5

1    *See also McCrary v. the Elations Company., LLC*, 2014 WL 1779243, *6 (C.D.Cal. 2014);

2    *Dunbar v. Google, Inc.*, 2013 WL 4428853, *2 (N.D.Cal. 2013); *Nucal Foods, Inc. v. Quality Egg*

3    *LLC*, 2012 WL 260078, *2 (E.D.Cal. 2012); and *Triquint Semiconductor, Inc.*, 2010 WL 2474387,

4    *1 (D.Ariz. 2010).  The Ninth Circuit's recognition in *Courthouse News Service* that there is a

5    qualified First Amendment right of public access to judicial records in civil cases, including newly

6    filed complaints, strengthens the argument that the compelling reasons standard should apply to a

7    motion to seal all or portions of a civil complaint.

8    Defendants cite *United Rentals, Inc. v. Ahern Rentals, Inc.*, 2012 WL 5418355, *1 (D.Nev.

9    2012) in support of their argument that the court need only apply a "good cause" standard.  The

10   plaintiff in *United Rentals* filed a complaint alleging that the defendant had violated the terms of a

11   confidential settlement agreement.  The court, citing *Kamakana*, 447 F.3d at 1180, held that

12   plaintiff had made a "'particularized showing of good cause' to permit it to file the complaint and

13   motion for preliminary injunction under seal."  Although the court appears to have applied a good

14   cause standard, the decision did not specifically analyze which standard should govern the sealing

15   of a complaint.  *United Rentals*, therefore, does not provide persuasive authority as to which legal

16   standard should govern.  Defendants also argue that *Krause v. Nevada Mutual Ins. Co.*, 2013 WL

17   3776416 (D.Nev. 2013) applied the good cause standard to a motion to seal a complaint attached to

18   a non-dispositive notice of removal.  *Motion (#3), pg. 4:24-26.*  In denying defendants' motion to

19   seal portions of the first amended complaint which allegedly contained confidential proprietary

20   information, the court stated that defendant "failed to carry their burden under even the lesser good

21   cause standard to seal documents attached to a non-dispositive motion." *Krause*, at *6.  It was

22   therefore unnecessary for the court to decide whether the higher "compelling reasons" standard

23   applied.  *Krause* does not support Defendants' argument that the good cause standard should apply

24   in this case.  This Court therefore concludes that a party seeking to seal a complaint in a civil action

25   must demonstrate compelling reasons to seal the complaint, in whole or in part.

26   In *IDT Corp. v. Ebay*, 709 F.3d 1220 (8th Cir. 2013), the district court, at the inception of

27   the action, granted an unopposed motion to seal an anti-trust complaint on the ground that it

28   referred to confidential information that was produced subject to protective orders in earlier patent

infringement actions between the parties.  The parties thereafter reached a settlement and the anti-trust suit was dismissed with prejudice.  A public interest law group subsequently moved to unseal the complaint.  In partially affirming the district court's denial of that motion, the Eighth Circuit noted that the parties had acquiesced "in what appears to be a modern trend in federal cases to treat pleadings in civil litigation (other than discovery motions and accompanying exhibits) as presumptively public, even when the case is pending before judgment." 709 F.3d at 1222-23.   The court further stated:

> Where the common-law right of access is implicated, the court must consider the degree to which sealing a judicial record would interfere with the interests served by the common law right of access and balance that interference against the salutary interests to be served by maintaining confidentiality of the material sought to be sealed. (citation omitted) The Second Circuit usefully observed that judicial records and documents will "fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995).  "[T]he decision as to access is one best left to the sound discretion of the trial court . . . in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599, 98 S.Ct. 1306; *see also United States v. McDougal*, 103 F.3d 651, 657-58 (8th Cir. 1996); *United States v. Webbe*, 791 F.2d 103, 106 (8th Cir. 1986).

*IDT Corp.*, 709 F.3d at 1223.

In holding that the public's interest in having access to the complaint was minimal, the court stated:

> Modern cases on the common law right of access say that "the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and resultant value of such information to those monitoring the federal courts." *Amodeo*, 71 F.3d at 1049; *see also Lugosh*, 435 F.3d at 119; *In re Boston Herald, Inc.*, 321 F.3d 174, 198 (1st Cir. 2003). The complaint in this case "play[ed] only a negligible role in the performance of Article III duties." *Amodeo*, 71 F.3d at 1050.  The court never adjudicated any aspect of the claims on the merits; its only action before APLC's intervention was to enter a stipulated dismissal based on a settlement.  The anti-trust complaint is thus analogous to the complaint documents in *Riker v. Federal Bureau of Prisons*, 315 Fed.Appx. 752 (10th Cir. 2009), where the public's interest in access was "weak" because the court considered the documents "only to determine whether to seal them," and they "had little to do with the district court's exercise of judicial power." *Id.* at

. . .

. . .

755.  In this circumstance, "the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason."  *Amodeo*, 71 F.3d at 1050.

*Id.* at 1224.

Although the Eighth Circuit concluded that it was proper to seal the portions of the complaint that contained confidential information, the district court failed to set forth reasons for sealing the entire complaint.  The court therefore remanded the case to the district court to make a further determination as to which portions of the complaint should remain sealed.

The Eighth Circuit's statement in *IDT Corp.*---that the public's interest in access to a civil complaint is weak where the court has not adjudicated any aspect of the claims on the merits---is arguably at odds with the Ninth Circuit's recognition of a qualified First Amendment right of access to newly filed complaints in civil actions.  The reasoning in *IDT Corp.* is relevant, however, to the application of the compelling reasons standard and the balancing of interests that the court is required to make under that standard.  Where, as here, the complaint has not yet been served on the defendants, it may be appropriate to seal those portions of a complaint that make inflammatory allegations regarding private or personal behavior which are potentially defamatory and substantially harmful to the defendant by virtue of their mere publication.  As the litigation progresses toward adjudication, however, the balance of interests will shift back in favor of the public's right of full access to the allegations of the complaint.

In *Kamakana*, the court stated that, in general, compelling reasons sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such court files might have become a vehicle for improper purposes, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets.  On the other hand, the mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records.  *Kamakana*, 447 F.3d at 1179, quoting *Foltz v. State Farm*, 331 F.3d at 1136.  Where the court draws the line between allegations that gratify private spite, promote public scandal, or circulate libelous statements, versus allegations that are merely embarrassing or incriminating is not entirely clear.  Given the compelling reasons standard, however, the court should resolve such doubts in

favor of disclosure.

Plaintiff argues that many courts have recognized that the risk of harm to reputation is not sufficient to overcome the strong presumption in favor of public access to court proceedings and records. *Opposition (#8), pg. 4.* In particular, Plaintiff cites *Doe v. Public Citizen*, 749 F.3d 246, 269-70 (4th Cir. 2014) in which the court stated as follows:

> A corporation very well may desire that the allegations lodged against it in the course of litigation be kept from public view to protect its corporate image, but the First Amendment right of access does not yield to such an interest. The interests that courts have found sufficiently compelling to justify closure under the First Amendment include a defendant's right to a fair trial before an impartial jury, *Press–Enter., Co.,* 464 U.S. at 510, 104 S.Ct. 819; protecting the privacy rights of trial participants such as victims or witnesses, *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 607–08, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); and risks to national security, *United States v. Aref,* 533 F.3d 72, 83 (2d Cir. 2008); *Detroit Free Press v. Ashcroft,* 303 F.3d 681, 705 (6th Cir. 2002). Adjudicating claims that carry the potential for embarrassing or injurious revelations about a corporation's image, by contrast, are part of the day-to-day operations of federal courts. But whether in the context of products liability claims, securities litigation, employment matters, or consumer fraud cases, the public and press enjoy a presumptive right of access to civil proceedings and documents filed therein, notwithstanding the negative publicity those documents may shower upon a company. A corporation may possess a strong interest in preserving the confidentiality of its proprietary and trade-secret information, which in turn may justify partial sealing of court records. *See Nixon,* 435 U.S. at 598, 98 S.Ct. 1306. We are unaware, however, of any case in which a court has found a company's bare allegation of reputational harm to be a compelling interest sufficient to defeat the public's First Amendment right of access. Conversely, every case we have located has reached the opposite result under the less demanding common-law standard. See, e.g., *Procter & Gamble Co. v. Bankers Trust Co.,* 78 F.3d 219, 225 (6th Cir. 1996) ("commercial self-interest" does not to qualify as a legitimate ground for keeping documents under seal); *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 663 (3d Cir. 1991) (harm to a "company's public image" alone cannot rebut the common-law presumption of access); *Cent. Nat'l Bank of Mattoon v. U.S. Dep't of Treasury,* 912 F.2d 897, 900 (7th Cir. 1990) (information that "may impair [a corporation's] standing with its customers" insufficient to justify closure); *Littlejohn,* 851 F.2d at 685 (a corporation's "desire to preserve corporate reputation" is insufficient overcome common-law right of access); *Wilson v. Am. Motors Corp.,* 759 F.2d 1568, 1570–71 (11th Cir.1985) (per curiam) ("harm [to] the company's reputation" is insufficient to outweigh common-law right of access).

*Doe v. Public Citizen* involved a lawsuit seeking to enjoin the United States Consumer Products Safety Commission (CPSC) from publishing in its online publicly accessible database "a

1    report of harm" that attributed the death of an infant to a product manufactured and sold by the

2    plaintiff.  The plaintiff argued that the report that the CPSC intended to publish contained material

3    inaccuracies.  The district court ultimately agreed with the plaintiff's position and granted summary

4    judgment in favor of the plaintiff.  The district court also sealed all documents filed in the case and

5    made "sweeping redactions" in its memorandum decision granting summary judgment to plaintiff,

6    included redacting "virtually all of the facts, expert testimony and evidence supporting its

7    decision."  *Id.* 749 F.3d at 252-53.  The district court's sealing decision was premised on plaintiff's

8    assertion that if the judicial records were made public, it would suffer the very injury to its

9    "reputational and fiscal health" it was seeking to prevent by enjoining CPSC from publishing the

10   report of harm.  The Second Circuit overruled the district court and ordered that the entire judicial

11   record in the case be unsealed.

12           Although the above quoted statements in *Doe v. Public Citizen* are relevant to the decision

13   on the motion in this case, there are several distinguishing factors.  First and foremost, the district

14   court in *Doe* sealed virtually every document in the case, including the dispositive motions,

15   exhibits and substantial portions of the court's written decision granting summary judgment.  The

16   plaintiff, who had invoked the court's jurisdiction, was the party seeking to seal the proceedings.

17   The action involved the safety of a product manufactured by a commercial entity and was filed

18   against a governmental agency charged with protecting public safety.  The case also involved an

19   issue of first impression in regard to the rules and regulations governing a CPSC report of harm,

20   and was therefore a matter of greater public interest than is a lawsuit between private individuals,

21   regarding their personal conduct and behavior.  In so stating, the Court does not minimize the

22   public interest in civil actions alleging conduct that is not only tortious, but also criminal.

23           In *Mann v. Boatwright*, 477 F.3d 1140 (10th Cir. 2007), the plaintiff filed a lawsuit in

24   federal court challenging the orders of a state probate court that imposed a guardianship over her

25   father who suffered from Alzheimer's disease, appointed another relative as the father's guardian

26   and upheld the guardian's authority to limit the plaintiff's access to her father.  The district court

27   denied plaintiff's motion to seal the complaint and also dismissed the action pursuant to the

28   *Rooker-Feldman* doctrine.  The Tenth Circuit affirmed both orders.  In support of her motion to

seal the complaint, plaintiff argued that her father would be profoundly embarrassed if the details of

the complaint were publicly available.  She also argued that releasing the complaint to the public

would constitute a profound invasion of her own privacy.  The Tenth Circuit stated that the

presumption of public access to judicial records "'can be rebutted if countervailing interests heavily

outweigh the public interests in access.'"  477 F.3d at 1149, citing *Rushford v. New Yorker

Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988).  In upholding the district court's order, the court

stated:

> The complaint contains a detailed history of [plaintiff's] on-going
> feud with her family and discloses that Joseph has been diagnosed
> with Alzheimer's disease.  We are not convinced, however, that
> [plaintiff's] privacy concern with respect to this information is
> sufficiently critical to outweigh the strong presumption in favor of
> public access to judicial records. *Cf. James v. Jacobson*, 6 F.3d 233,
> 239 (4th Cir. 1993) (holding that plaintiffs should have been
> permitted to use pseudonyms so as to prevent their children from
> learning the true identity of their father).

477 F.3d at 11409.

The court further noted that much of the information in the complaint was already a matter

of public record in the state court proceedings.  *Id.*

In this case, it is the Defendants who seek to seal the complaint which has not yet been

served upon them.  Thus, unlike the movants in *Doe v. Public Citizen* and *Mann v. Boatwright*, the

party seeking to seal the complaint is not the party who initiated the action and invoked the judicial

process.[1]  The dispute in this case is primarily between two private individuals and arises out of

---

[1] Plaintiff filed this action under a pseudonym.  Her arguments about the public's right of access to the allegations in her complaint are therefore undercut by her own desire to proceed anonymously and presumably to avoid the embarrassment and the humiliation resulting from the public airing of the events and conduct described in the complaint.  Plaintiff has no presumptive right to litigate under a fictitious name.  To the contrary, "[t]he normal presumption in litigation is that parties must use their real names." *Doe v. Kamehameha Schools/Pauahi Bishop Estate*, 596 F.3d 1036, 1042 (9th Cir. 2010), citing *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000).  "This presumption is loosely related to the public's right to open courts . . . and the right of private individuals to confront their accusers." *Id.* citations omitted).  In order to proceed anonymously, a plaintiff must show both (1) a fear of severe harm, and that the fear of severe harm is reasonable. *Doe v. Kamehameha Schools/Pauahi Bishop Estate*, 596 F.3d at 1043.  During the hearing on Defendants' motion, Plaintiff's counsel advised the court that Plaintiff is willing to proceed by her true name if the Court denies Defendant's motion to seal.  Before entering any such order, the Court will give Plaintiff an opportunity to meet the standard set forth above.

their personal relationship which, if the allegations of the complaint are true, was dysfunctional. Not all of the factual allegations in the complaint or the exhibits attached thereto are necessary to satisfy Fed.R.Civ.Pro. 8(a)(2)'s requirement that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief," as interpreted by *Bell Atlantic Corp. v. Twombley,* 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  The public disclosure of certain of these allegations will be highly damaging to the reputation of the principle individual defendant.  In the event the complaint is not served on the defendant, he may have no opportunity to contest or refute those allegations in a judicial proceeding and, in that regard, may suffer even greater harm.

Defendants have not, however, demonstrated compelling reasons to seal the complaint in its entirety.  The public has a right to know the identities of the parties in this action and the nature of the claims and causes of action being asserted.  While this may still result in some unjustified harm to Defendants' reputation, the public's right of access to judicial records, even in actions which may ultimately lack merit, outweighs a defendant's interest in avoiding all negative publicity. Ultimately, the judicial system relies on the ability of the public to distinguish between mere allegations and proven facts.  Once a private dispute enters the public judicial arena, the parties cannot be completely shielded from adverse publicity even if they are unwilling participants in the litigation.

## **CONCLUSION**

Because this case is still at the stage prior to the effectuation of service of  the complaint and the filing of any responsive pleading, the principal defendants' legitimate interest in avoiding unnecessary and potentially unjustified damage to his reputation reasonably outweighs the public's interest in reviewing the detailed factual allegations of the complaint.  The Court finds that at this stage of the litigation, Defendants have provided compelling reasons to seal those paragraphs of the complaint which contain specific factual descriptions of the defendants' alleged misconduct, as

---

That stated, the Court does not perceive grounds which would justify permitting Plaintiff to pursue this action anonymously.

well as the exhibits attached to the complaint which allegedly support those factual allegations. However, the balance will shift in favor of full public access to the factual details of the complaint if this action proceeds further in the litigation process, and particularly if it reaches the stage when the claims are to be adjudicated.  Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Leave to File Notice of Removal Exhibit A Under Seal (#3) is **granted**, in part, and **denied**, in part, as follows:

1.     The following paragraphs of the complaint are hereby sealed pending further order of the Court: 12, 13, 20, 27, 31, 40, 41, 42, 45, 46, 47, 48, 54, 56, 58, 59, 60, 61, 63, 65, 67, 68, 69, 72, 73, 74, 75, 76, 77, 78, 79, 80, 82, 83, 84, 85, 88, 99, 122, 153, and 342.

2.     The exhibits attached to the complaint are also hereby sealed pending further order of the Court.

3.     Defendant shall file as an amended exhibit to its Notice of Removal a redacted copy of the complaint in accordance with this order.

**IT IS FURTHER ORDERED** that Plaintiff shall file a motion within seven (7) days of the filing of this order showing why she should be permitted to pursue this action anonymously. Defendants shall respond to Plaintiff's motion within seven (7) days and Plaintiff shall file her reply, if any, within five (5) days thereafter.  If Plaintiff waives her request to proceed anonymously or if the Court denies her motion, Plaintiff shall promptly file an amended complaint stating her true name.  Consistent with this order, the unredacted amended complaint shall be filed under seal and an unsealed redacted version of the amended complaint shall also be filed.

DATED this 18th day of July, 2014.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge