UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JESSICA HENNING, <br><br> Plaintiff, <br><br> v. <br><br> CHEERAG ARYA, *et al.*, <br><br> Defendants. | Case No. 2:14-cv-00979-RFB-GWF <br><br> **<u>ORDER</u>** |

**I.  INTRODUCTION**

This case is before the Court on a Motion to Dismiss filed by Defendant Cheerag Arya ("Arya"). (ECF No. 130). Arya argues that this case should be dismissed for lack of personal jurisdiction. For the reasons stated below, Arya's motion is GRANTED IN PART and DENIED IN PART.

**II.  BACKGROUND**

At the hearing on September 22, 2015, the Court stated on the record the facts alleged in Plaintiff Jessica Henning ("Henning")'s Amended Complaint. (ECF No. 70). The Court incorporates those alleged facts here, and also incorporates the background set forth in its prior Order.[1] (ECF No. 137).

On June 13, 2016, Arya filed the instant Motion to Dismiss. (ECF No. 130). Henning filed her Response on June 27, 2016. (ECF No. 135). Arya filed his Reply on July 11, 2016. (ECF No. 136). On July 26, 2016, the Court entered an Order granting in part and denying in part the prior Motion to Dismiss, and granting in part and denying in part Defendants' Motion to Strike. (ECF

---

[1] The Court also incorporates the additions made to the record by Henning's counsel. See Tr. at 7-8, ECF No. 90.

No. 137). On August 3, 2016, the Court held a hearing on the instant Motion to Dismiss, and took the matter under submission. (ECF No. 139).

### III. LEGAL STANDARD

#### A. Motion to Dismiss for Lack of Personal Jurisdiction

A plaintiff bears the burden of establishing personal jurisdiction. Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015) (citation omitted). Where, as here, the Court resolves a motion to dismiss without holding an evidentiary hearing, a plaintiff must "make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." Morrill v. Scott Fin. Corp., 873 F.3d 1136, 1141 (9th Cir. 2017) (citations omitted). To make a *prima facie* showing, the plaintiff "need only demonstrate facts that if true would support jurisdiction." Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). When evaluating the plaintiff's *prima facie* showing, "[a]ll uncontroverted allegations in the complaint are deemed true, and factual disputes are to be resolved in favor of the non-moving party." Morrill, 873 F.3d at 1141.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014); see also Daimler AG v. Bauman, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). Nevada permits its courts to exercise jurisdiction to the same extent as the Constitution. Nev. Rev. Stat. § 14.065. Therefore, this Court need only consider the constitutional principles of due process. Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty., 137 S. Ct. 1773, 1779 (2017). This due process determination has two components: (1) whether the defendant has the requisite minimum contacts with the forum state to render it subject to the forum's jurisdiction; and (2) whether the assertion of jurisdiction complies with "traditional notions of fair play and substantial justice." Walden, 134 S. Ct. at 1121. The Supreme Court has articulated a two-part test for the "substantial connection" or minimum contacts required for personal jurisdiction: (1) the relationship between defendant and the forum must arise out of contacts the defendant himself creates, and (2) defendant must have contacts with the forum state and not merely with persons residing in the forum state. Id. at 1122.

There are two categories of personal jurisdiction: general and specific. Bristol-Myers

Squibb, 137 S.Ct. at 1779-80. General jurisdiction is appropriate in the one location where an individual defendant has her domicile; any claim may be heard against a defendant in the place where she is subject to general jurisdiction. Id. at 1780 (citations omitted). Alternatively, a court may find specific jurisdiction where the subject of a lawsuit is related to a defendant's in-state contacts with the forum. Id. (citations omitted).

### B. *Forum Non Conveniens*

A district court may "decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties." Lueck v. Sundstrand Corp., 236 F.3d 1137, 1142 (9th Cir. 2001). "A forum non conveniens determination is committed to the sound discretion of the district court." Id. at 1143.

A party moving to dismiss on grounds of *forum non conveniens* must "show two things: (1) the existence of an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." Boston Telecomm. Grp. v. Wood, 588 F.3d 1201, 1206 (9th Cir. 2009) (citation and quotation marks omitted).

### C. **Motion to Dismiss for Failure to State a Claim**

In order to state a claim upon which relief can be granted, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In ruling on a motion to dismiss for failure to state a claim, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Security Servs., Inc., 706 F.3d 1017, 1019 (9th Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted).

## IV. RELEVANT FACTUAL FINDINGS FOR JURISDICTION

The Court has reviewed the record in this case and makes the following factual findings solely for the purpose of the jurisdictional inquiry.

### A. Arya's 2012 Introduction to Henning

Henning is a resident of Clark County, Nevada. Arya is a resident of the United Arab Emirates ("UAE"). Arya became a client of Selective Search, a matchmaking service, in Summer 2012, for the purpose of finding a romantic partner. That summer, Arya visited the Selective Search offices in Chicago, Illinois in person, and described to the client representative that his ideal partner was "a young, career-minded woman that would be open to relocate." After Arya returned to his residence, he signed a contract with Selective Search and began to receive profiles of potential partners. Selective Search sent Arya an email with Henning's profile, which showed that Henning was a resident of Las Vegas, Nevada. After Selective Search confirmed that Henning was willing to relocate, Arya expressed interest in meeting Henning, and Selective Search provided Arya with Henning's phone number and email address.

### B. 2012 Communications and Arya's 2013 Visit to Nevada

Henning and Arya first spoke on the telephone on or about November 12, 2012. Henning informed Arya that she was a resident of the State of Nevada and located in Las Vegas at the time. The parties continued to communicate by telephone, text message, and email from November 12, 2012 through January 24, 2013.

On or about January 24, 2013, Arya traveled to Las Vegas, Nevada for the purpose of meeting Henning. The parties met for dinner, which lasted approximately one hour. On or about January 25, 2013, Henning and Arya met for dinner again in Las Vegas, Nevada. After Arya was escorted from the property by security, Henning paid the dinner bill and took a taxi cab home.

The following morning, Arya contacted Henning by telephone, while Arya was still in Las Vegas. Arya apologized for his conduct the prior evening. Henning expressed her concern regarding Arya's conduct. Arya told Henning he was nervous and that was the basis for his excessive alcohol consumption on the previous night. He also assured Henning that he did not have an alcohol abuse problem.

Henning relied upon those representations and agreed to meet with Arya again that evening. The parties met for dinner at a Las Vegas hotel. Arya presented Henning with a Cartier

watch and three Chanel handbags, stating that the items were belated Christmas gifts and an early birthday gift.

### C. Enticements to Leave Nevada

On or about January 27, 2013, Arya departed Las Vegas, Nevada. Prior to his departure Arya invited Plaintiff to travel to Switzerland, Belgium, and Dubai to visit Arya during races in which his Ferrari team was competing. On or about January 30, 2013, Arya directed an email to Henning while she was in Las Vegas, Nevada, in which he invited Henning on a trip to Portofino, Italy.

On or about February 6, 2013, Arya emailed Henning while she was in Las Vegas, Nevada, in which he informed Henning that he would be purchasing her a Bentley Continental Wl2 automobile and a Bentley Flying Spur automobile.

On or about February 7, 2013, Arya directed an email to Henning while she was in in Las Vegas, Nevada, in which he informed Henning that he would be purchasing for Henning a Ferrari in Switzerland. The content of the email allegedly states "the Swiss one will be for you."

On or about February 23, 2013, Henning flew to Switzerland at Arya's request. Arya purchased the airline tickets and sent them to Henning while she was in Las Vegas, Nevada. While the parties were in Switzerland, Arya gave Henning several gifts valued in total at $345,000, including:

- Diamond earrings
- A Rolex watch
- A Frank Muller watch
- An Hermes watch

On or about March 1, 2013, while Henning and Arya were still in Switzerland, Arya consumed alcohol in excess, contrary to his prior representations. He became verbally abusive toward Henning. Henning stated she would cut the trip short and book travel back to Las Vegas, Nevada, for the next day. Arya insisted that the four gifts he gave to Henning be given back to him. Henning, feeling threatened, gave the gifts back to Arya. Henning returned to Las Vegas, Nevada the next day.

- 5 -

On or about March 6, 2013, Arya emailed Plaintiff while she was in Las Vegas, requesting to speak by telephone. Henning agreed. During the phone call, Arya apologized for his earlier conduct, apologized for taking Henning's property, and stated that he "wanted to make it up" to Henning.

On or about April 9, 2013, Arya had a Frank Muller watch shipped to Henning in Las Vegas, Nevada, to replace the watch Arya had previously taken from Henning. Arya made the travel arrangements for Henning to meet him in Antwerp, Belguim and directed those arrangements to Henning in Las Vegas, Nevada. On or about April 15, 2013, at Arya's request, Henning flew to Antwerp.

On April 15, 2013, Arya presented Henning with a 7.52 carat yellow diamond "commitment ring." Arya told Henning that an official 20 carat engagement ring would be presented to her in an Indian customary ceremony. Arya represented that the commitment ring was Henning's and was not conditioned on marriage.

On May 1, 2013, Arya called Henning while she was in Las Vegas, Nevada. Arya requested that Henning spend more time with him. Henning responded that she would lose income from her employment as a real estate professional. Arya said he would hire Henning to work for his company, JBF RAK, LLC.

On or about May 23, 2013, while Henning was in Las Vegas, Nevada, Arya sent her a text message with a picture of a Red Ferrari 458 Italia race car, stating that it was Henning's "new toy." On May 24, 2013, Henning traveled from Las Vegas, Nevada to Milan, Italy, upon Arya's request. Henning met with Arya, who was visibly intoxicated.

The next day, Arya gave Henning another Ferrari 458 Italia race car as an anniversary present. Arya expressly agreed to ship the Ferrari to Henning in Las Vegas, Nevada, as it was her vehicle. Arya failed to ship the vehicle, and failed to allow Henning to maintain possession of the vehicle. Henning returned to Las Vegas, Nevada on June 2, 2013.

On or about June 21, 2013, Arya shipped a Ferrari 575 Super America automobile to Henning while she was in Las Vegas, Nevada. Henning later shipped the vehicle to New York to be maintained by Berlinetta Motorcars ("Berlinetta"), a company contracted by Arya. The car still

belonged to Henning at the time it was shipped to New York. Arya has directed Berlinetta to refuse to return the vehicle to Henning.

On June 24, 2013, Henning had a phone call with Arya while she was in Las Vegas, Nevada. Arya told Henning he was going to purchase two Audemar Piaget watches for Henning and give them to her in Chicago, Illinois. On or about July 4, 2013, while the parties were in Chicago, Arya presented Henning the watches he had promised her. The watches are valued at $75,000 and $25,000.

On or about September 10, 2013, while in Las Vegas, Nevada, Henning agreed to meet Arya in Dubai. Prior to Henning's departure from Las Vegas, Arya provided Henning a contract of employment with JBF RAK, LLC. Henning was to be employed in Dubai and receive 36,500 AED per month for a period of three years. Henning was reluctant to reconcile with Arya, but ultimately agreed as a result of Arya's representations about his conduct, their future relationship, additional expensive "gifts" and her future employment and income. On or about September 15, 2013, Henning arrived in Dubai. On or about September 19, 2013, Arya gave Henning a 5 carat diamond ring.

On or about September 22, 2013, Henning signed the JBF RAK, LLC employment contract, as did Arya. Arya did not fulfill the terms of the employment contract, so Henning did not become an employee of JBK RAK, LLC. On or about September 25, 2013, as a result of Arya's excessive alcohol consumption, contrary to his prior representations, Henning was forced to leave her room in Arya's Dubai apartment.

Henning returned to the United States on September 27, 2013. On the same day, Arya emailed an apology to Plaintiff, representing that he would not have another drink and requesting a reconciliation.

On or about October 1, 2013, while Henning was in Las Vegas, Nevada, Arya told her that Arya would purchase a Ferrari Italia Speciale 458 automobile for her. Henning relied upon that representation. Later the same day, Arya, while intoxicated, sent Henning a message that he was ending their relationship. The next day, Henning emailed Arya, outlining the issues that arose from his excessive alcohol consumption.

On or about October 9, 2013, Arya, while intoxicated, contacted Henning and stated that they were "done." Arya demanded return of Henning's 5 carat diamond ring. Henning complied by sending the ring via mail to Arya's office address.

On or about October 12, 2013, Arya emailed Henning while she was in Las Vegas, Nevada. Arya stated that he was addressing his alcoholism and wanted to reconcile. The parties discussed Arya's plans for counseling and his alleged reason for consuming alcohol. Arya represented that he would not drink again.

On or about October 19, 2013, Arya again emailed Henning while she was in Las Vegas, Nevada, advising her that he had purchased a brand new Ferrari automobile for her. Arya delivered the vehicle to Henning in Dubai, but failed to ship it to Las Vegas, Nevada, as promised.

Henning relied upon Arya's representations that he would not drink alcohol again, and therefore agreed to meet with Arya in Dubai on November 11, 2013. Arya further promised Henning a ring when she arrived in Dubai. When Henning arrived in Dubai, Arya gave Henning a 7 carat diamond ring.

On or about December 3, 2013, Henning returned to the United States. On or about December 24, 2013, while Henning was in Las Vegas, Nevada, Arya emailed Henning and stated: "I promise never to enter a place that holds liquor. Bar, restaurant, anyone's house or a liquor store. Pls pls pis pls." Henning alleges that this was Arya's attempt to reconcile. Thereafter, Arya sent Henning a text apologizing for his behavior.

On or about December 28, 2013, while Henning was in Las Vegas, Nevada, Arya's mother, Veena Bhagirath Arya ("Veena") emailed Henning, stating that Veena would ensure that Arya would not consume alcohol in excess, which would resolve the issues of the above stated misconduct on Arya's part. The email represented that: "I VEENA BHAGIRATHARYA stand firm and say it will not be a cause of concern." Henning relied upon those representations and visited Arya in Dubai in January 2014.

**V.     DISCUSSION**

As Henning does not contend that Arya is subject to general jurisdiction, the Court

- 8 -

proceeds only to apply the factors relevant for a finding of specific jurisdiction.

### A. The Walden factors

#### *1. Relationship between Defendant and the Forum*

To establish the first prong of the Walden test, the Court must find that a defendant's relationship with the forum arises out of contacts the defendant himself has created with the forum state. Walden, 134 S. Ct. at 1122 (quoting Burger King Corp. v. Rudzewicz, 471 U. S. 462, 475 (1985)). The relevant inquiry is not satisfied merely by establishing contacts between plaintiff, or third parties, and the forum state. Id. (citing Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U. S. 408, 417 (1984)). Arya argues that Hennings's theory of jurisdiction commits this very error, because it "rel[ies] entirely on her own forum connections and Arya's knowledge of them," in violation of Walden. (ECF No. 130 at 2). Henning counters that Arya is subject to this Court's specific jurisdiction because he made "numerous purposeful contacts with Nevada[.]" (ECF No. 135 at 14).

The Court finds that Arya purposefully made contacts with the forum. Arya traveled into the forum with the express purpose of indicating his desire to enter into a romantic relationship with Henning, and to begin the courtship process. This case is unlike World-Wide Volkswagen Corporation v. Woodson, in which the plaintiff unsuccessfully asserted personal jurisdiction when the defendant automobile distributor's sole contact with the forum was the purchaser driving the automobile into the state. 444 U.S. 286, 298 (1980). Here, Arya himself traveled to the forum with the explicit intention to cultivate a relationship with a resident who lived there, and with the alleged expectation of eventually persuading her to leave the forum. After his initial visit, Arya continued to maintain a connection with the forum, by directing gifts and travel arrangements to Henning while she was in the forum. These gifts and travel tickets were sent to Nevada on multiple occasions after Henning returned to the forum to escape Arya's alleged intoxication and misbehavior. Even when he caused other individuals to deliver the gifts to Henning, those deliveries were all done at Arya's direction. Therefore, the Court finds that the first element of the test is satisfied.

#### *2. Contacts with the forum state itself*

The second prong of the Walden "substantial connection" test requires the Court to determine whether the defendant has in fact made contacts with the forum itself, and not merely with persons residing there. Construing the facts pled as true, the Court finds that Arya established contact with Nevada each time he reached into the jurisdiction to persuade Henning to leave the protection of the state. This "reaching in" consisted of communications with Henning, and the sending of gifts and travel arrangements into the forum so that Henning would be persuaded to leave the state and join Arya elsewhere in the world. Arya also personally traveled to the forum for the purpose of seeing Henning and persuading her to enter into a relationship with him and, ultimately, leave the forum.

Arya relies heavily upon the Ninth Circuit's decision in Picot v. Weston, where the Court affirmed the district court's dismissal for lack of personal jurisdiction. 780 F.3d 1206 (9th Cir. 2015). There, the Ninth Circuit articulated a three-part test for "sufficient contacts with the forum" – "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." Picot, 780 F.3d at 1211 (citation omitted). The Ninth Circuit held that a plaintiff bears the burden to establish the first two prongs of the test. Id. The Court will briefly analyze each factor in turn.

i. Purposeful Direction or Purposeful Availment

The Court in Picot held that a "purposeful availment" analysis applies in contract cases, and a "purposeful direction" analysis applies in tort cases. Id. at 1212. As Henning's surviving claims are both tort causes of action, as set forth below, this Court need only determine whether Arya purposefully directed his actions at the forum state. Purposeful direction is found when the defendant (1) commits an intentional act, (2) expressly aims the act at the forum, and (3) causes harm the defendant knows is likely to be suffered in the forum. Id. at 1214 (citations omitted). This

test was first articulated by the Supreme Court in Calder v. Jones, 465 U.S. 783, 789-90 (1984), and is known as the "effects test."

The Court finds that Arya clearly acted with an "intent to perform an actual, physical act in the real world," on multiple occasions. Picot at 1214 (citation omitted). With regard to the fraudulent misrepresentation claim, which is related to the conversion claim, Arya committed an intentional act each time he communicated with Henning and directed gifts, travel arrangements, and the employment contract to her while she was in Nevada. His actions were expressly aimed at Nevada. Therefore, the requirement of harm is satisfied. It is irrelevant that "when [the parties] both agreed to be introduced [through the matchmaking service], the expectation that Henning would leave Nevada, in the event they decided to pursue a relationship, was crystal clear and mutual from day one." (ECF No. 130 at 10). Arya not only harmed Henning by directing his allegedly fraudulent acts to her, he harmed the jurisdiction itself in seeking to persuade one of its residents to leave its borders and the protections of its laws. Such injury is not "entirely personal" to Henning, as Nevada certainly has an interest in protecting its citizens from being coaxed away from the jurisdiction by alleged misrepresentations or improper conversion of property. The Court does not presume that personal relationships which rely upon state laws and the use of local commerce are less significant to Nevada than purely commercial relationships.

The Court is not persuaded by Arya's citation to Agahi v. Khorrami, No. CV-15-016440-PHX-JJT, 2016 U.S. Dist. LEXIS 15642 (D. Ariz. Feb. 9, 2016). The Court first notes that this unpublished case from another district court is not binding precedent. In addition, the Court finds the decision factually distinguishable. Based on the factual allegations made in the complaint, the court in Agahi found that defendant had never visited plaintiff in Arizona, nor had he even traveled to Arizona within the past ten years. 2016 U.S. Dist. LEXIS 15642 at *2. Here, Arya visited the forum with the explicit purpose of cultivating a romantic relationship with Henning which also included engaging commerce directed at the forum and an employment contract. This contact with the forum was not incidental – Arya established a relationship with Henning with ultimate objective that she leave the forum and join him in a forum abroad. Arya visited Las Vegas with the purpose of beginning a relationship with Henning, a known Nevada resident, and after he

returned to his residence, he remained connected to the forum by directing various forms of enticement to Henning to draw her away from the jurisdiction. As the jurisdiction suffers from the conduct alleged, the Court properly finds purposeful direction.

## ii. Claim Arising Out of or Relating to Defendant's Activities in the Forum

As the fraudulent misrepresentation claim underlies the remaining tort claim, the Court finds that this prong of the Picot inquiry is also easily satisfied. But for Arya's alleged misrepresentations, Plaintiff would not have been harmed when she continued the relationship and subjected herself to lost property through misrepresentations, and left the jurisdiction for an unfamiliar forum whose legal protections should could not readily access. The fraudulent misrepresentations directed to the forum led to Henning receiving gifts that were subsequently taken from her when Arya reneged on his promises. Therefore, the Court finds that Henning asserts claims that arise out of or are related to Arya's activities in the forum.

## iii. Reasonableness of Jurisdiction

Once a plaintiff establishes the first two elements of the Picot test, the burden shifts to the defendant to make a compelling argument that jurisdiction is not reasonable. Picot at 1212. Arya argues that the assertion of specific personal jurisdiction would be "substantially unfair." He cites back to his earlier Motion to Dismiss, where he makes four arguments in support of his position. (ECF No. 50 at 10-11). The Court is not persuaded by any of those arguments.

Arya first argues that he neither purposefully directed harmful conduct at Nevada, or purposefully availed himself of Nevada law. As discussed above, the Court finds purposeful direction, and a purposeful availment analysis is not required, as no contract claims are surviving.

Arya next argues that he bears a heavy burden of defending this action in Nevada, far from the UAE and with vastly different legal procedures. Arya being subjected to litigation in Nevada is not unduly burdensome for him. He has demonstrated the financial wherewithal and ability to readily travel globally. He has traveled to this forum on several occasions. He has directed expensive gifts to this forum and elsewhere in the United States whose value likely exceeds the litigation costs in this case.

Arya further contends that there is significant potential for conflicts with foreign sovereignty, where the UAE and India have an interest in adjudicating claims against their residents, particularly for actions that occurred there. The Court rejects this argument. Nevada also has an interest in providing a forum for its injured residents. Recognizing the competing interests, the Court finds that the scale tips in favor of establishing jurisdiction, particularly as many fraudulent misrepresentations were directed at Henning while she was in Nevada with the intent of convincing her to the leave the forum (and its protections). This leads the Court to reject Arya's fourth contention, that Nevada has only a slight interest in adjudicating this foreign dispute. The forum in fact has a significant interest.

Arya's additionally argues with regard to unreasonableness that Nevada will not provide the most efficient resolution of this controversy. The Court does not agree that the bulk of the witnesses and evidence that pertain to these surviving claims are located in foreign countries, or that foreign law will apply. The vast majority of the case will likely turn on the testimony of the parties and their experts.

Finding the Picot inquiry satisfied, the Court determines that the second element of the overarching Walden test is also satisfied.

**B.  Surviving Claims**

The Court briefly sets forth below the surviving causes of action in this case, and the relevant facts as alleged in Henning's Amended Complaint. The Court finds that, as to these causes of action, Henning sufficiently alleges facts that, if true, support the existence of jurisdiction.

*1.  Count 17: Fraudulent Misrepresentation*

The Court finds that certain facts alleged in the Amended Complaint support an exercise specific jurisdiction over Arya with regard to this claim for fraudulent misrepresentation. The cause of action cites to the following events:

- On or about March 6, 2013, after Henning returned to Nevada from a trip with Arya, Henning allegedly received an email from Arya wanting to make up for his misconduct during the trip – namely, taking four gifts away from Henning – and apologizing for taking Henning's property. (ECF No. 70 at 5, ¶ 22.)

- On or about May 1, 2013, Arya allegedly called Henning while she was in Nevada. Arya asked Henning to spend more time with him, and Henning expressed concern about losing money from not working. Arya stated that he would hire Henning to work for Arya's company, JBF RAK, LLC (ECF No. 70 at 6, ¶ 29).
- On or about September 10, 2013, Henning allegedly agreed to travel from Nevada to Dubai to meet Arya, at his request. Prior to her travels, Arya sent Henning an employment contract for JBF RAK, LLC. Henning was reluctant to reconcile at that time but agreed to meet Arya as a result of his material misrepresentations. (ECF No. 70 at 9, ¶ 49).
- On or about September 27, 2013, Arya allegedly sent Henning an email while she was in Nevada. He apologized for Henning being forced to leave her room in Arya's Dubai apartment, and materially represented that he would not have another drink, and requested that Henning reconcile with him. (ECF No. 70 at 10, ¶ 56).
- On or about October 12, 2013, while Henning was in Nevada, she allegedly received an email from Arya stating specific actions he was taking to address his alcoholism, and also stating his desire to reconcile. (ECF No. 70 at 10-11, ¶ 61).
- On or about December 24, 2013, while Henning was in Nevada, she allegedly received an email from Arya promising "never to enter a place that holds liquor," in an attempt to reconcile with Henning. (ECF No. 70 at 12, ¶ 67).
- Shortly thereafter, while Henning was still in Nevada, Arya allegedly sent Henning a text message apologizing for his behavior while intoxicated. (ECF No. 70 at 12, ¶ 68).

The Court finds that these allegations, taken with consideration of all of the allegations of the Amended Complaint and the jurisdictional facts, establish jurisdiction over this claim.

### 1. Count 18: Conversion

The Court finds that certain facts alleged in the Amended Complaint and the jurisdictional facts support an exercise of specific jurisdiction over Arya with regard to this claim for conversion. The Court finds that Arya enticed Henning to leave the safety and stability of Nevada with a gift, or multiple gifts, or promises of a gift; provided her with such gifts once she agreed to travel abroad to see him, either immediately before or during her arrival to another country; and then took those

gifts from Henning or otherwise interfered with her possession of them. This includes but is not limited to the following alleged or jurisdictional facts:

- On or about February 23, 2013, Henning traveled from Nevada to Switzerland at Arya's request. Arya purchased the plane ticket and sent it to Henning. While in Switzerland, Arya allegedly gave Henning diamond earrings, a Rolex watch, a Frank Muller watch, and a Hermes watch ("the four gifts"). Henning was present for the purchases and left the store in possession of the items. Approximately a week later, Arya became intoxicated, contrary to prior representations. Arya became verbally abusive. When Henning told Arya that she would cut the trip short and go back home to Nevada the next day, Arya demanded the four gifts back. Henning felt threatened and gave the four gifts back to Arya. (ECF No. 70 at 5, ¶¶ 19-20).
- On or about April 9, 2013, while Henning was in Nevada, Arya allegedly sent Henning a Frank Muller watch to replace the one he took from her in February. (ECF No. 23 at 5, ¶ 23). Later, Arya took the watch from Henning.
- On or about April 15, 2013, Arya allegedly gave Henning a 7.52 yellow diamond ring. Arya indicated that the gift was a "commitment ring" that was Henning's to keep, not conditioned on marriage. (ECF No. 70 at 6, ¶ 25). The prior paragraph stated that the parties were in Belgium at the time and that Arya requested Henning's travel from Nevada. Later, Arya took the ring from Henning.
- On or about May 23, 2013, while Henning was in Nevada, Arya allegedly texted her a picture of a Red Ferrari 458 Italia and tells Henning that it is her "new toy." (ECF No. 70 at 6, ¶ 30). The next paragraph states that on the following day, she met an intoxicated Arya in Milan, Italy.
- On or about May 25, 2013, Arya allegedly gave Henning a Red Ferrari 458 Italia as a monthly anniversary present and expressly agreed to ship it to Nevada, but later failed to do so. (ECF No. 70 at 7, ¶ 32).
- On or about June 21, 2013, Arya allegedly shipped a Ferrari 575 Super America to Henning in Nevada. Henning shipped the car to New York to be maintained by Berlinetta Motocars,

1    a company Arya allegedly contracted. Henning claims she still retained possession of the
2    car. Arya allegedly told Berlinetta to refuse to return the vehicle to Henning. (ECF No. 70
3    at 7, ¶ 34).
4  - When the parties were in Chicago, Illinois on or about July 4, 2013, Arya allegedly gave
     Henning two Audemar Piaget watches referenced in the preceding paragraph. (ECF No. 70
     at 7, ¶ 36). In the previous paragraph, Arya contacted Henning while she was in Nevada
     and told her that he would give her the two Piaget watches when they met in Chicago.
     Later, Arya took these watches from Henning.
  - On or about September 15, 2013, Henning arrived to Dubai to meet Arya. Arya gave
     Henning a 5 carat diamond ring. (ECF No. 70 at 9, ¶ 51). The gift shortly followed the
     alleged offer of employment with JBF RAK, LLC, made to Henning while she was in
     Nevada. Henning was reluctant to reconcile and make the trip, due to Arya's alleged prior
     misconduct, but made the trip in reliance on Arya's representations. Later, Arya took the
     ring from Henning.
  - In November 2013, Arya allegedly gave Henning a 7 carat diamond ring while the parties
     were in Dubai. (ECF No. 70 at 11, ¶ 64). In the prior paragraph, Henning claims that she
     relied upon Arya's representations that he would not drink alcohol again and upon his
     promise that he would give her the diamond ring, and agreed to meet him in Dubai. Later,
     Arya took the ring from Henning.

The Court finds these alleged or jurisdictional facts establish jurisdiction over this claim.

### C.     Other Arguments Raised in the Motion to Dismiss

#### 1.     *Forum Non Conveniens*

Arya again raises the argument that the entire Amended Complaint should be dismissed on the ground that UAE is the only proper forum. The Court has already stated in its prior Order that *forum non conveniens* cannot be used to dispose of the entire litigation; the Court incorporates that discussion into this Order. As previously stated, Arya does establish the existence of an adequate alternative forum, the first element required for a finding of *forum non conveniens*. As to the balance of private and public interest factors, the Court finds that the private interest factors set

forth in Lueck, while insufficient to dispose of the entire action, do support dismissal of Henning's remaining causes of action. Lueck v. Sundstrand Corp., 236 F.3d 1137, 1145-47 (9th Cir. 2001) (citations omitted). The Court finds that litigation of Henning's other claims would be inconvenient for both parties, as the majority of the witnesses and evidence relevant to Henning's remaining claims are located abroad. Further, such litigation would be costly to both sides. Because the Court lacks jurisdiction over the claims involving events that took place in a foreign forum, the public interest in those claims is entitled no weight. The Court finds it improper to dismiss Counts 17 and 18 on the ground of *forum non conveniens*, for the reasons stated in its prior Order and above.

### *2. Service on Defendant*

The Court found in its prior Order that service was proper, and therefore this argument is also rejected. The Court incorporates the discussion as set forth in that Order.

### *3. Failure to State a Claim*

The Court now addresses the sufficiency of Plaintiff's allegations with regard to Counts 17 and 18.

#### i. Fraudulent Misrepresentation Claim

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This rule applies to fraud claims under state law as well as federal claims. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003). To meet the particularity requirement of Rule 9(b), the complaint must identify the "who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011)).

Under Nevada law, the elements for a fraudulent misrepresentation claim are as follows: "1. A false representation made by the defendant; 2. Defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation); 3. Defendant's

intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; 4. Plaintiff's justifiable reliance upon the misrepresentation; and 5. Damage to the plaintiff resulting from such reliance." Bulbman, Inc. v. Nev. Bell, 825 P.2d 588, 592 (Nev. 1992) (citations and quotation marks omitted). A claim for fraudulent misrepresentation requires a false representation by defendant. Guilfoyle v. Olde Monmouth Stock Transfer Co., Inc., 335 P.3d 190, 197 (Nev. 2014) (citing Bulbman).

Henning's claim for fraudulent misrepresentation, as set forth above, alleges multiple false representations made by Arya. She alleges that Arya made such representations with the belief that they were false, and with the intention to induce her to leave the forum. Henning alleges that she reconciled with Arya, and traveled outside of the forum to meet him, in reliance upon these misrepresentations. Although the majority of tort claims are dismissed from the suit, Henning sufficiently alleges damage in that Arya's conduct did not conform to the representations he made. Construing these allegations as true, these facts demonstrate that, each time Henning returned to Nevada after promises to her were not realized, Arya would apologize and state that he would refrain from misconduct, but would later resume the misconduct in contradiction to the representations made once he enticed Henning out of the jurisdiction. Arya contends that these allegations are personal opinions, and that their truth or falsity is unknowable. However, at this stage of the proceedings, the Court finds that Henning need not prove the statements are false, as the Court only considers whether the allegations are sufficient under Rule 9(b). At the motion to dismiss stage, all that is required for fraud claims is that they are pled with particularity. Henning alleges specific dates on which these representations occurred, details of the statements made, and the harm resulting from those misrepresentations. For these reasons, the Court finds that her claim for fraudulent misrepresentation is sufficiently pled.

ii. Conversion Claim

In Nevada, conversion is defined as "a distinct act of dominion wrongfully exerted over personal property in denial of, or inconsistent with, title or rights therein or in derogation, exclusion or defiance of such rights." Edwards v. Emperor's Garden Rest., 130 P.3d 1280, 1287 (Nev. 2006).

Arya argues that Henning's claim for conversion fails because her allegations refer to items that she never possessed, voluntarily returned, or simply left behind. Arya cites to Paragraphs 30, 32, and 62 of the Amended Complaint. With regard to Paragraphs 30 and 32, as discussed above, the Court finds that the alleged conversions relate to Arya's misrepresentations about vehicles he would provide to Henning. The Court finds that Henning sufficiently alleges that Arya represented that these items belonged to Henning, and part of his misconduct was interfering with Henning's right to possess the property. The claim for conversion therefore is sufficiently pled with regard to the items described in Paragraphs 30 and 32. Although Arya does not appear to challenge the pleading of alleged conversion of the other items described in this count, the Court also finds those allegations sufficient to the extent set forth above. The Court does agree that it lacks jurisdiction over the facts alleged in Paragraph 62.

**VI. CONCLUSION**

For the reasons stated in this opinion,

**IT IS THEREFORE ORDERED** that Defendant Cheerag Arya's Motion to Dismiss (ECF No. 130) is GRANTED IN PART and DENIED IN PART. The case will proceed as to Claims 17 and 18. The remaining Claims are dismissed.

**IT IS FURTHER ORDERED** that Plaintiff Jessica Henning comply with the directions set forth in the Court's prior Order (ECF No. 137), as to the filing of a Second Amended Complaint, and additionally omit all causes of action except Claims 17 and 18.

**IT IS FURTHER ORDERED** that the stay in this case is lifted.

**IT IS FURTHER ORDERED** that Defendant's Motion to Stay (ECF No. 148) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Clarification (ECF No. 149) is DENIED AS MOOT.

**IT IS FURTHER ORDERED** that this Court's minute order of September 30, 2017 (ECF No. 143) is AMENDED IN PART to reflect that the case will proceed only on Counts 17 and 18.

The Court finds that it inadvertently indicated that certain claims would proceed that the Court did not intend to go forward.

**IT IS FURTHER ORDERED** that a status conference is set for **July 9, 2018 at 11:45 a.m**.

DATED: July 1, 2018.

_____

**RICHARD F. BOULWARE, II**
**United States District Judge**