UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JESSICA HENNING, | Case No. 2:14-cv-00979-RFB-NJK |
| Plaintiff/Counter-Defendant, | ORDER |
| v. | |
| CHEERAG B. ARYA, | |
| Defendant/Counter Claimant. | |

## I.    INTRODUCTION

Before the Court is Plaintiff Jessica Henning's Motion for Default Judgment and Motion to Seal. For the following reasons, the Court grants the Motion for Default Judgment in part and denies the Motion for Default Judgment in part, and grants the Motion to Seal.

## II.    BACKGROUND

The Court incorporates the background section herein from its previous orders, ECF Nos. 137, 163, 186, and 210 and emphasizes the following:

Henning sued Arya in May 2014 in state court, alleging multiple state law claims.[1] ECF No. 41-1. Arya removed the matter to this Court and then moved to dismiss the initial Complaint for lack of jurisdiction. ECF Nos. 1, 50. Before the initial Motion to Dismiss was resolved, Henning filed a First Amended Complaint on October 30, 2014 based on the Court denying Henning's Motion to proceed anonymously and granting Henning's motion to unseal the initial Complaint. ECF Nos. 67 (Court's Order on Motions), 70 (Amended Complaint).

---

[1] Henning also sued additional defendants, all of whom have been dismissed from this matter. ECF Nos. 83, 89, 137.

The Court then held a hearing on the initial Motion to Dismiss on September 22, 2015. ECF No. 89.  The Court denied the motion as it related to Arya and allowed for jurisdictional discovery.  ECF No. 89.  The Court followed its oral ruling with a written order on July 26, 2016 ("July 2016 Order"), in which the Court ordered Henning to strike specific derogatory language from the Amended Complaint.  ECF No. 137.  The Court also ordered Henning to file a Second Amended Complaint within fourteen days.  Id.

However, after jurisdictional discovery closed, Arya moved to dismiss the matter again. ECF No. 130.  The Court entertained oral arguments on the renewed Motion to Dismiss on August 3, 2016.  ECF No. 139.  The Court concluded the hearing by ordering Henning to refrain from filing a Second Amended Complaint until after the renewed Motion to Dismiss was resolved.  Id.

The Court issued its order on the renewed Motion to Dismiss on September 30, 2017 and a subsequent written order on July 1, 2018 (July 2018 Order"), dismissing all claims but Claim Seventeen (Fraudulent Misrepresentation) and Claim Eighteen (Conversion).  ECF Nos. 143, 163.

The Court then held a status conference on July 9, 2018.  ECF No. 164.  During the status conference, the Court emphasized that the surviving claims were limited according to its July 2018 Order but clarified that the claims could potentially be related to other information.  ECF No. 166 at 3–5.  The Court also gave Henning two weeks to file the Second Amended Complaint.  Id.

Henning filed her Second Amended Complaint on July 23, 2018.  ECF No. 167; see also ECF No. 168 (Errata to Second Amended Complaint). Arya moved to strike and dismiss the Amended Complaint. ECF Nos. 169, 170. The Court denied and granted the motion to strike in part and denied the motion to dismiss. ECF No. 186. Arya filed his Answer and asserted a counterclaim against Henning on January 14, 2019. ECF No. 191.  On April 17, 2019, the Court granted a motion to withdraw all attorneys of record as to Arya. ECF No. 206. Henning moved to strike Arya's answer on May 9, 2019. ECF No. 207. No opposition was filed. On April 12, 2020 the Court granted Henning's motion to strike Defendant Cheerag B. Arya's Answers and Counterclaim, ECF Nos. 155, 191, in their entirety, finding that Arya willfully and repeatedly avoided being available for his deposition, which was rescheduled three times to accommodate him. ECF No. 210. The Court's order, which was delivered to the address on file for defendant,

was returned as undeliverable on May 15, 2020. ECF No. 211.

Henning moved for entry of clerk's default on July 14, 2020, ECF No. 216, and the clerk's entry of default was entered on July 30, 2020. ECF No. 217. On September 14, 2021, Henning moved for default judgment. ECF No. 222. On September 28, 2022, the Court denied Henning's motion for default judgment without prejudice. ECF No. 223.

Although the Court found "a legal basis to enter a default judgment based upon the Motion," it also found that the information regarding Henning's damages related to the loss of income and loans from third parties due to her inability to work after the alleged abuse was insufficiently detailed. Id. Henning had failed to provide verified documentation showing which deposits to her bank accounts represent which gifts or loans from third parties and had similarly failed to compare her earnings reports before and after the alleged seven-year period she did not work because of the alleged abuse. Id. The Court gave Henning leave to refile her motion in 45 days and instructed Henning to provide verified information to support her damages request for each of her claims for relief. Id. On November 10, 2022, Henning filed a renewed motion for default judgment. ECF No. 224. On November 14, 2022, Henning filed a motion for leave to file under seal Exhibit 5 (IRS tax return documents) to her renewed motion for default judgment. ECF No. 234.

### III. DISCUSSION

#### A. *Motion for Default Judgment*

The granting of a default judgment is a two-step process directed by Rule 55 of the Federal Rules of Civil Procedure. Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986). The first step is an entry of default, which must be made by the clerk following a showing, by affidavit or otherwise, that the party against whom the judgment is sought "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a).

The second step is entry of a default judgment under Rule 55(b), either the clerk enters judgment (only where the plaintiff's claim is for a certain sum or where a sum can be made certain by computation), see Fed. R. Civ. P. 55(b)(1), or the party must apply to the Court for default

judgment, see Fed. R. Civ. P. 55(b)(2). Factors which a court, in its discretion, may consider in deciding whether to grant a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of the substantive claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of a dispute of material fact, (6) whether the default was due to excusable neglect, and (7) the Federal Rules' strong policy in favor of deciding cases on the merits. Eitel, 782 F.2d at 1471-72.

If an entry of default is made, the court accepts all well-pleaded factual allegations in the complaint as true; however, conclusions of law and allegations of fact that are not well-pleaded will not be deemed admitted by the defaulted party. DirecTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007). Additionally, the Court does not accept factual allegations relating to the amount of damages as true. Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977). Default establishes a party's liability, but not the amount of damages claimed in the pleading. Id.

In considering the seven Eitel factors, the Court finds that default judgment against Defendant Arya is warranted.

The first and sixth factors favor granting default judgment because Arya failed to defend or appear at all in this matter since April 2019. Arya's failure to appear for over four years prejudices Henning by preventing her from recovering the value of the property that Arya wrongfully converted as well as the loss of income and the value of the loans that Henning received from third parties to maintain her residence/housing and well-being during this period. Further, Arya's failure to appear for four years demonstrates the lack of excusable neglect. And while the seventh factor generally counsels against the granting of default judgment, Arya's failure to appear prevents the Court from determining the claims on their merits.

The Court next examines the merits of the substantive claims and sufficiency of the Complaint. Henning seeks default judgment for Claim Seventeen (Fraudulent Misrepresentation) and Claim Eighteen (Conversion). The Court finds that the second and third Eitel factors, the merits of the substantive claims and the sufficiency of the complaint, respectively, favor judgment for Henning.

///

### i. Fraudulent Misrepresentation

"Under Nevada law, [a plaintiff] has the burden of proving each and every element of his fraudulent misrepresentation claim by clear and convincing evidence: (1) A false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4) damage to the plaintiff as a result of relying on the misrepresentation." Barmettler v. Reno Air, Inc., 114 Nev. 441, 956 P.2d 1382, 1386 (Nev. 1998). "Fraud is never presumed; it must be clearly and satisfactorily proved." Havas v. Alger, 85 Nev. 627, 461 P.2d 857, 860 (Nev. 1969).

Henning's claim for fraudulent misrepresentation alleges multiple false representations made by Arya. For example, Henning alleges that on May 1, 2013, Arya asked to spend more time with Henning. When Henning expressed concern about losing money from not working, Arya stated he would hire Henning to work for his company. On or about September 10, 2013, Henning allegedly agreed to travel from Nevada to Dubai to meet Arya at his request. Prior to her travels, Arya sent Henning an employment contract for JBF RAK, LLC. Although Henning was reluctant to reconcile, she agreed to meet Arya because of his material misrepresentations about her future employment at JBF RAK, LLC. On at least five separate occasions, Arya sent emails or text messages to Henning, apologizing for his alcohol abuse, promising to take specific actions to address his alcoholism, and promising to refrain from drinking in the future. Henning alleges that Arya made such representations with the belief that they were false, and with the intention to induce her to leave the United States and move to Dubai. Henning alleges that she reconciled with Arya, left her real estate company, and moved to Dubai in reliance on these misrepresentations.

Arya's conduct did not conform to the representations he made. For example, Arya did not fulfill the terms of the employment contract, so Henning did not become an employee of JBK RAK, LLC. Additionally, on or about September 25, 2013, as a result of Arya's excessive alcohol consumption, contrary to his prior representations, Henning was forced to leave her room in Arya's Dubai apartment. Construing these allegations as true, these facts demonstrate that, each time Henning returned to Nevada after promises to her were not realized, Arya would apologize and

state that he would refrain from misconduct, but would later resume the misconduct in contradiction to the representations made once he enticed Henning out of the jurisdiction.

Henning has suffered significant harm because of her reliance on these misrepresentations. She has been diagnosed by a Board-Certified Psychiatrist with post-traumatic stress disorder ("PTSD") due to Arya's abusive behavior. And as a result of her PTSD, Henning was unable to operate her company Status International Real Estate. Inc. at full capacity for six years. She has also gone into significant debt because of the funds she has had to borrow from third parties during this period of reduced employment and unemployment.

The Court finds, accepting these supported allegations as true, that there are sufficient facts to support a finding in favor of Plaintiff Henning against Defendant Arya on the fraudulent misrepresentation claim.

### ii. Conversion

In Nevada, conversion is defined as "a distinct act of dominion wrongfully exerted over personal property in denial of, or inconsistent with, title or rights therein or in derogation, exclusion or defiance of such rights." Edwards v. Emperor's Garden Rest., 122 Nev. 317, 130 P.3d 1280, 1287 (Nev. 2006).

Henning alleges that Arya enticed Henning to leave the safety and stability of Nevada with a gift, or multiple gifts, or promises of a gift; provided her with such gifts once she agreed to travel abroad to see him, either immediately before or during her arrival to another country; and then took those gifts from Henning or otherwise interfered with her possession of them. Henning alleges that Arya gifted and later interfered with her possession of eighty-four gifts, including diamond earrings, a Rolex watch, two Frank Muller watches, a Hermes watch, a 7.52-carat yellow diamond ring, two Audemars Piguet watches, a 5-carat diamond ring, a 7-carat diamond ring, and numerous other items which are fully listed in the expert gemologist report. ECF No. 231-1. Henning alleges that Arya represented that these items belonged to Henning. Yet each of these gifts were later taken by Arya.

The Court finds, accepting these supported allegations as true, there are sufficient facts to support a finding in favor of Plaintiff Henning against Defendant Arya on the conversion claim.

### iii. Misrepresentations and Conversion of the Ferrari

Henning also alleges that Defendant Arya gifted her a Ferrari 575 SuperAmerica. Arya instructed Henning to ship it to Berlinetta Motorcars. Henning alleges she has not seen the Ferrari since she shipped it. However, the claims related to the Ferrari were dismissed by the Court. Therefore, the Court denies Plaintiff's request for default judgment on the misrepresentation and conversion of the Ferrari 575 SuperAmerica.

### iv. Damages

If an entry of default is made, the Court accepts all well-pleaded factual allegations in the complaint as true. <u>DirecTV, Inc.</u>, 503 F.3d at 854. The Court does not accept factual allegations relating to the amount of damages as true, and while default establishes a party's liability, it does not establish the amount of damages claimed in the pleading. <u>Geddes</u>, 559 F.2d at 560.

Here, the Court finds that Plaintiff is entitled to $3,949,905 for the conversion of Plaintiff's property and the loss of income and loans Plaintiff accrued in order to sustain her shelter and well-being during the period she was unable to work due as a result of Defendant's actions.

#### 1. Conversion damages

Conversion is a major "interference with the right to control personal property that justif[ies] requiring the actor to pay the property's full value." <u>Edwards v. Emperor's Garden Rest.</u>, 122 Nev. 317, 130 P.3d 1280, 1287 (Nev. 2006). To support her damages for the conversion of property claim, Henning provides receipts, photos, and emails regarding the various gifts she received from Arya. Henning also retained Charles I. Carmona, CG, ASA, a certified gemologist and appraiser. Mr. Carmona appraised the value of each gift on the list of eighty-four items. In total, Mr. Carmona appraised the value of all the gifts to be $6,475,488.65. However, Mr. Carmona notes in his expert report that he was not able to confirm values for at least twenty-one items, because he did not have any documentation or images to refer to. For example, Henning claims she received an uncut diamond necklace set and a turquoise and diamond jewelry set from Arya's mother and that these are valued at $1,700,000 and $2,200,000 respectively. As to these two items, Mr. Carmona writes that "without images or more detailed descriptions, it is not possible to estimate values independently." Mr. Carmona identifies 20 other items on the spreadsheet for

which there is no documentation, images, or receipts.

The Court finds that Henning has submitted credible evidence as to the items where there are images, receipts, or other documentation that Mr. Carmona could use in his appraisal. However, the Court does not find Mr. Carmona's appraisals of items for which there is no documentation to be sufficient. Removing these items from Henning's claim for conversion damages, the Court finds that there is evidence to support conversion damages in the amount of $2,126,567 against Defendant Arya.

### 2. Loans from third parties

Henning seeks $1,348,440 in damages to cover the cost of loans she had to take out because she has been unable to pay for shelter as a result of her PTSD and Defendant's abusive behavior towards her. In Henning's prior motion for default judgment, she had only supported her claims for these damages with her own bank statements. These bank statements showed various deposits in her account but did not reveal which of these deposits were gifts or loans from third parties. In her renewed motion for default judgment, Henning obtained Declarations from two of her lenders: her mother, Lenore Henning, and a friend, Khusrow Roohani.

Lenore Henning asserts in her Declaration that she loaned her daughter $158,525 between 2013 and 2022. Lenore Henning provides a detailed accounting of each transaction made to Plaintiff along with copies of her deposits, receipts of web payments, photocopies of checks made from Lenore Henning to Henning's real estate company, and photocopies of deposit slips. She also includes screenshots of Venmo Transactions and Apple Pay transactions made between Lenore Henning and Plaintiff over the relevant time period.

Mr. Roohani states in his Declaration that he loaned Henning $1,189,916 from 2013-present. To support his Declaration, Mr. Roohani also provides a detailed accounting of each transaction made to Henning between 2013-2022 along with photocopies of checks made out to Plaintiff's real estate company and deposit slips representing transactions to Plaintiff. Finally, Plaintiff once again provides copies of her Chase bank statements covering the years from 2013-2022 in order to further corroborate the deposit of these loans into her bank account.

The Court finds that Henning has submitted credible evidence to support the damages

related to the cost of loans from third parties in the amount of $1,348,440.

### 3. Loss of income

Henning also seeks damages for the loss of income she has endured because of her reliance on Defendant's misrepresentations. Henning's previous Motion for Default Judgment sought $990,500 in damages to cover the loss of income spanning a period of seven years (2014-2021) as a result of Defendant's misrepresentations. Henning's only support for this claim was a 2012 and 2013 tax return form which showed her income to be at $142,093 and $141,048 respectively. The Court denied the request because Henning had failed to compare her earnings report before and after the alleged seven-year period she did not work because of the alleged abuse.

In her renewed Motion for Default Judgment, Henning seeks $917,608 in lost wages for the years 2014-2020. To support her request, Henning provides tax return documents for the years 2012, 2013, 2014, 2015, 2016, and 2017. These tax return documents demonstrate that Henning's income dropped significantly during the relevant time. For example, Henning's earnings decreased from $141,048 in 2013 to $22,382 in 2014, zero income in 2015, $69,000 in 2016, and zero income in 2017. In her Declaration, Henning also alleges she had zero income for the years of 2018, 2019, and 2020. Henning states that she does not have tax return filings for these years because she did not earn the minimum amount required by the IRS to file nor did she owe any special taxes.

The Court finds that Plaintiff has submitted credible evidence in support of her loss of income damages for the years 2014-2017. However, because Henning does not provide any documentation for her income from 2018-2020, the Court will grant her damages request for loss of income for the years of 2014-2017—a total of $474,898. Henning is therefore entitled to $1,823,338 in damages on the fraudulent misrepresentation claim.

In sum, the Court finds that Plaintiff Henning submitted credible evidence to support the amount of damages of $3,949,905 against Defendant Arya in this case, and that it is subject to calculation. See Davis v. Fendler, 650 F.2d 1154, 1161 (9th Cir. 1981). This includes $2,126,567 for the conversion of Henning's property based on the expert evaluation report, $1,348,440 to cover the cost of loans she received from third parties during the time period when she was unable

to work as a result of Arya's misrepresentations, and $474,898 to cover Henning's loss of income during this same time period.

### v. Punitive Damages

Under NRS 42.005, a Plaintiff may recover punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, express or implied." An award of exemplary or punitive damages made pursuant this section may not exceed "(a) three times the amount of compensatory damages awarded to the plaintiff if the amount of compensatory damages is $100,000 or more; or (b) three hundred thousand dollars if the amount of compensatory damages awarded to the plaintiff is less than $100,000." Id. Proof of bad faith, in and of itself, does not establish liability for punitive damages. United Fire Insurance Company v. McClelland, 105 Nev. 504, 780 P.2d 193 (Nev. 1989).

Henning requests the Court award at $7,228,395 in punitive damages against Arya for his fraudulent conduct. This is the fullest extent permitted under NRS 42:0005: three times the amount of compensatory damages. Henning calculates these damages based on her request for $2,409,465 in damages on the fraudulent misrepresentation claim. But as discussed above, the Court will only grant Henning $1,823,338 on the fraudulent misrepresentation claim. The Court finds that an award of punitive damages is warranted based upon Arya's conduct outlined in this case. The facts of this case establish a pattern of deception, theft, and abuse over the span of several years. This conduct evinced clear malice towards Henning and resulted in her mental and physical oppression by Arya. The Court thus awards $5,000,000 in punitive damages.

### A. Judgment Interest

Nevada law provides "When no rate of interest is provided by contract or otherwise by law, or specified in the judgment, the judgment draws interest from the time of service of the summons and complaint until satisfied . . . . at a rate equal to the prime rate at the largest bank in Nevada as ascertained by the commissioner of financial institutions on January 1 or July 1, as the case may be, immediately preceding the date of judgment, plus 2 percent. The rate must be adjusted accordingly on each January 1 and July 1 thereafter until the judgment is satisfied." Nev. Rev. Stat. § 17.130(2) (emphasis added). The Court finds that prejudgment interest in this case began

accruing on the day that Arya was served with the summons: July 1, 2014.

### B. *Motion to Seal*

Finally, Henning has moved for leave to file her tax return documents under seal. Courts have long recognized "a general right to inspect and copy public records and documents, including judicial records and documents." Kamakana v. City & Cty. of Honolulu, 447 F.3d 1172, 1179 (9th Cir. 2006) (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978) (quotation marks omitted)). However, this right is not absolute. Id. There is a "strong presumption in favor of access" to dispositive motions or their attachments, and a party seeking to seal such document bears the burden of overcoming this presumption by providing a compelling and fact-based reason for the document to be sealed. Id. (citations and quotation marks omitted).

Henning has filed a motion to seal that is unopposed. Henning argues that her IRS tax return information is confidential financial information and seeks to keep all parts of her company's tax returns sealed from the public. The tax return forms contain highly detailed information about Henning's real estate company's finances. The Court agrees that this is sensitive information. Further, 26 U.S.C. § 6013(a) provides federal tax "returns and return information shall be confidential." Henning has demonstrated compelling reasons to seal these records. Accordingly, the Court grants the motion to seal.

### IV.     CONCLUSION

**IT IS ORDERED** that Plaintiff's Motion for Default Judgment (ECF No. 224) is GRANTED in part and DENIED in part. The Court enters default judgment against Defendant Cheerag B. Arya for Plaintiff's conversion and fraudulent misrepresentation claims as follows:

1. For conversion damages sustained by Plaintiff in the amount of $2,126,567.
2. For fraudulent misrepresentation damages sustained by Plaintiff in the amount of $1,823,338.
3. For prejudgment interest from the time of service of the summons and complaint, July 1, 2014.
4. For post-judgment interest at the statutory rate.

**IT IS FURTHER ORDERED** that Plaintiff may file a separate briefing on the reasonable attorney's fees and costs of suit herein incurred, to be added to the judgment.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for leave to file under seal Exhibit 5 (ECF No. 234) is GRANTED. The Court may also order the document(s) to be unsealed in the future.

DATED: September 30, 2023.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**